at a stock at 22-1370. Mr. Watson, we're ready for your argument. All right, may it please the court. My name is Ryan Watson. I'm here arguing on behalf of Plaintiff Appellant Robert Carraway, State Farm Insured. I'm here arguing on behalf of  Plaintiff Appellant Robert Carraway. We are here today because our client was denied his stay in court on claims which the district court did not find to be futile. We are asking this court on appeal to, excuse me, to correct that on Genova Review to reverse and remand the dismissal under Rule 12b-6. Counsel, why did the district court have to make a futility finding, which is sort of the species of amendment law, if you didn't file a motion to amend properly under the local rules? Your Honor, we aren't arguing that futility is the only way, but under Foman v. Davis and under Calderon, there are, sorry, not Calderon under Frank, there are several different justifications which the court could have found. One of them is futility. It could have found undue delay, bad faith, dilatory motive. That's all for denying the motion to amend? Correct. Which you didn't make? Correct, but in Calderon the court said, this court has said that a failure to file a formal motion is not always necessary. It has to be something else that is necessary. And in most cases like this, there is a finding of futility, including all the ones that the court cited. There was some sort of a, it was a 1983 claim where the claims were futile and they would not have been able to be fixed on amendment. Or in other insurance cases, it's very common for them to be dismissed without prejudice, unless the court, of course, finds they would be futile or that matching allegations, no combination of those could make the case available. So are you asking, is your concern that you were denied a without prejudice dismissal or that you should have been granted leave to amend? That is one of the concerns is that it's a, it's kind of a related issue. I mean, courts when they examine it, they do kind of view it through both the lens of without prejudice versus with prejudice because it implicitly means that there was a denial of leave to amend. We also had in our response brief to the motion to dismiss, asked for leave to amend in that. And I know that normally a, you know, drive-by kind of whatever the court finds, we'd like leave to amend. Normally that isn't held to be sufficient. In this case, there was more than that. We had actually said specifically, if the court finds that our reference to code and manufacture instructions needed more fleshing out, which it did in its final order, we asked that the court would allow us to plead those and it did not allow us to do so. So it is a little bit unusual, but those two kind of, they're interrelated issues, but we didn't just, you know, we didn't file a formal motion to amend, that is true, but we did ask for leave with specific information. And in past cases, we cited, I believe three in the briefs, Triplett, Brever, and Calderon, they've said failure to file a formal motion is not faithful. So if you, if we're writing the opinion, are we supposed to say the district court, we're ruling in your favor, the district court erred by denying leave to amend or the district court erred by dismissing with prejudice? Well, Your Honor, I mean, we're also asking for just a reversal of the dismissal as a whole. Assuming we don't do that. Sure. So in that case, I think either outcome would be the same, but certainly the dismissal with prejudice would be what we would be asking the court to overturn. Okay. So, so basically the two points, so our primary request, as I indicated, was counsel. Yes, Your Honor. Tell me what, what was the bad faith in this case? Yeah, so Your Honor, we alleged, oh, sorry, go ahead. No, what was the bad faith? So we had alleged that there was an unreasonable investigation, that State Farm had missed the scope of the damage that was actually caused by the hailstorm at issue in the case, so that they had undervalued it. And it turned out to be kind of shown to be the case by the fact that there was a later appraisal award which found a larger scope of repair to be necessary. Let me be more precise. Sure. Is it, are you alleging or are you attempting to allege that their delay in getting to the value was bad faith and caused you to lose the appreciation from the else? I think I understand your question, Your Honor, and I'll try to specify more specifically. So there are two basic kind of allegations of this unreasonable delay and denial. One of them is an unreasonable denial, that's the recoverable depreciation that we're arguing we're entitled to under a breach of contract theory. The second, though, is that there was a delay in the amount of actual cash value that should have been paid. So the amount that the appraisal award ended up being for actual cash value. We are arguing that they delayed that because they should have caught all of those issues when they did their initial inspection. Well, I can't tell from complaint, so this is actually outside the record. Your Honor, I mean... Did they pay you $21,000? Your Honor, they have paid the actual cash value of the appraisal award. The only issue that's outstanding is the depreciation. Okay. What amount is that? Is that the $60,864 less the depreciation value? That's the amount that they have paid. What are the amount of dollars they have paid? I have that specifically here. One second. So they have paid $39,510.68, which appears to be... Oh, so that's the difference in the estimates. So they've paid, I believe it's $45,000-something in that range, because that is the appraisal amount, which is the $60,000. So what they have paid is the amount of the jointly determined value less the depreciation value, right? Correct, yes. The appraisal of value. So all your client app is out, according to your theory, is the depreciation value, correct? Under the breach of contract, yes. And so your bad faith theory has to be that... What was the bad faith in not giving you the depreciation value? Because that was not determined until after the two years had expired, during which the work had to be completed. Your Honor, so our theory is that the depreciation is still owed because there is a breach of contract pleaded, one of those elements being either performance of the repairs within two years or justifiable non-performance. We've argued in our brief, and we explicitly did, that it was impossible to complete repairs because State Farm had undervalued the claim to such an extent. They had applied improper pricing, we alleged. They had failed to account for certain code of manufacture repairs that were necessary. We allege that as well. So because they undervalued it... But that's not in the complaint, is it? Those allegations are, Your Honor. We alleged impossibility on paragraphs 21 and 22. We alleged specifically the failure to recognize the scope kind of throughout paragraphs 10 and so on. I mean, there are allegations in the complaint that there was impossibility, that there was a disagreement over scope, which resulted in us being unable to finance repairs. Well, first of all, you don't use the word impossibility in the complaint, do you? I believe we do. I believe we said specifically impossibility. I think you do say that... Well, I don't understand how it is in the complaint, quote in verse and phrase, where it is that the fact that they did not get more than $39,000, or the complaint didn't get more than the $48,000, prohibited him from proceeding with the repair. Your Honor, we didn't plead that it prohibited from or that there was any policy provision that stopped him from doing it. It was more of a impossibility argument, which is a theory under contract law, which would excuse his performance of those repairs. So we're not going by what the policy says. We're going by Colorado legal theories of impracticability. Part of that is also that which we alleged in, you know, the briefing here, obviously, but, you know, our client wasn't able to know what repairs needed to be done before there was an agreement on them. And so, you know, to require clients to do repairs before the insurance company has agreed to them would be to ask them to essentially self-insure. They'd have to guess what repairs needed to be done, go out on a limb and finance them... Let me ask you, isn't it necessary for you to prevail that you have to allege that the delay in coming to a value until two years after, more than two years after the incident, that that delay is the fault of the defendant? You have to allege and show that. Well, Your Honor, I believe we did say that it was the defendant's fault because they did not recognize the full scope of the loss. But there are different things and there are holes where we're trying to fill them in to figure out what's going on. One of which is, as I understand it, the hailstorm is July 2019, the inspection's October 2020. So there's a big, long delay before the inspection, which could be either because your client doesn't report it or because it immediately reports it and the insurer sits around for 14 months or 15 months. Those are two different worlds as far as bad faith, and we can't tell from the complaint which one it is. Correct. I don't think that we're raising any issue with that particular period of time. But aren't you? Because you're saying that the insurer's delay kept your client from being able to do those repairs within two years. Well, if your client's the one who's responsible for most of the delay, that would have a bearing on bad faith, wouldn't it? Not necessarily, Your Honor. I mean, the insurer owes obligations additional to what the insurer owes. The insurer has to know that there's been a hailstorm that's caused damage, right? That's correct, yes. Now, let me just switch gears real quickly back to something Judge Murphy asked about. Is the amount that you're seeking about $12,000 in depreciation? Correct, for the breach of contract. And the other money was paid before the complaint? Yes, the complaint that we filed in state court. How did you get to $75,000? Your Honor, we filed the claim in state court. I believe at that point there was still, you know, treble damages for the potential delay of the amount that basically the difference between the appraisal and the amount that State Farm's initial estimate was, which was approximately $39,000. So you've been paid? Well, but under Colorado law, you're still entitled to two times the covered benefit under Colorado revised statute 11, sorry, 10.3.1.1.5. So double that plus $12,000. That's $24,000. You still have another $50,000 to go. Well, so, Your Honor, what I'm saying is that the amount that we're saying was delayed was that $39,000 difference and that that would be doubled under the statutes. Even though it had already been paid, it would be delayed? Correct, correct. You're still entitled to recover for a unreasonably delayed sum. And the court has held this in certain cases. The U.S. general case that we cited, the court found that there was a nominal breach of essentially $1, but it found that the jury still could have found a delay that resulted in double damages. Whether Mr. Carraway is the one who caused the delay and didn't report it for however many months, over a year. Same result? We don't have that on the record because that's something State Farm can certainly argue to a jury. Isn't that something you have to plead? Don't you have to plead and inform us of that? Or are we supposed to guess and resolve everything in your favor that you haven't pleaded? Well, Your Honor, if they're going to argue that notice is a defense, that's something that they could then argue. We're not required to anticipate what State Farm might argue in our pleading. And that's something they could raise in some judgment. But they alerted you to concerns in their conferral. How do we factor that in? Well, the conferral isn't really part of the record either. I mean, it's not something that the court should consider under Rule 12b-6, the G versus Pacheco case says that the court can only consider three categories of information. But additionally, I mean, you know, this is something we believed our complaint was well pleaded or that alternately it would be dismissed without prejudice if there was an issue. But we believe that our complaint was well enough pleaded. And, of course, opposing counsel is generally going to disagree that their client did anything wrong. Even had we moved to amend, it's quite possible that they would have just renewed the motion to dismiss. That does happen. It would depend on what you amended and said. And we're at a loss. We don't know what you would say. We have all these questions and no answers. Well, Your Honor, we did provide in our response that we would at least allege certain specifics about code and manufacture instructions, which if the State Department failed to consider those in its initial estimate, that could plausibly be unreasonable. We're only required to provide a short statement under Iqbal and Twombly. We're not required to provide detailed factual allegations. So I'd like to reserve the rest of my time if I can. Can I ask one question just one? Oh, please. And we'll give you an extra minute or two if we run you out. Thank you, Your Honor. Your Honor, in terms of your futility position, is there anything about the district court's order itself that helps you? In other words, is there anything about the district court's order that suggests it thought that your claims were not futile? The district court specifically said that, you know, we had pleaded code and manufacture instructions, but we hadn't said what exactly those were, which would have lent plausibility to our allegations. So it seemed to imply that this is a viable claim. Okay. So it all turned on, in your view, or correct my understanding, it wasn't a matter of law dismissal. It can be viewed more as you didn't develop the facts, so your claims are not plausibly pled. It wasn't a legal basis for dismissal. Correct, Your Honor. The court didn't find a specific one of those factors in Foman or in Frank. It just basically seemed to say, well, it's not good enough. And typically in cases like this, when courts find that in insurance cases, they'll dismiss without prejudice. So do you think the dismissal with prejudice was a sanction? I'm not sure. Perhaps. The court didn't frame it as such. But I don't know. All right. No more questions? Thank you, Your Honor. Thank you, Your Honor. May it please the court. I'm Hillary Patterson, representing the defendant at Eppley State Farm Fire and Casualty Company. I won't be delivering arguments, but at council table with me is co-counsel Frank Patterson. I'd like to address a few points that were raised during Mr. Carraway's counsel's presentation. The court asked about certain facts that are missing from the complaint, and I think that's an important focus. I understand that these things are beyond the record, but it actually brings to light and emphasizes the reason that the trial court got it right here. This was not just a dismissal based on the technicality. Yes, there were insufficient facts pleaded, but some of the facts that were not pleaded that I think were conveniently omitted, that would have lent themselves to State Farm's case even more, were the very facts that all three of you asked about. One, we've got the date of losses, July 5th, 2019. When was the loss reported? That's missing from the complaint. The loss was reported 11 months later, almost a year after the loss. Now, I understand, again, Your Honors, that you may not necessarily be able to consider those facts, but the facts about the timing of what happened are important to develop a plausible claim of bad faith, and those are the facts that are missing from this complaint. What was the date, how many months after the filing of the claim, 11 months after the incident, how long after that did State Farm come back with their $21,000 proposal? So the loss was reported in October of 2020, excuse me, of May of 2020. State Farm came out and did an inspection, and did a second inspection at the homeowner's request, and issued the estimate for $21,000 in October of 2020. After that time, after October of 2020, nothing occurred on the claim. Nothing substantive occurred on the claim. You'll see in the complaint that the next allegation, the next sequence of events, is that the insured hired a public adjuster. What's, again, missing is when did that happen? And then the public adjuster prepared an estimate that was substantially larger than State Farm's estimate. When did that happen? If the facts had been pleaded, you would know that State Farm got that estimate from the public adjuster just one week before the two-year deadline to complete repairs. Could it be June of 2021? Yes, June 28th of 2021. That gave State Farm one week to have knowledge of a dispute, and to somehow come to an agreement and resolve that dispute, and allow this homeowner to recover benefits and make repairs. That is just simply untenable. And then the other factor missing is that within that one week's time, they didn't come to agreement, but they also didn't demand an appraisal. The appraisal demand did not come until three weeks after the two-year deadline to complete repairs. So it's suggested in the complaint that State Farm caused... Before that suggestion occurred... I'm sorry, Your Honor. It's alleged in the complaint that Mr. Carraway submitted to State Farm the need for an extension on the two-year period. Correct, Your Honor. So when the public adjuster submitted the estimate for the first time and made himself known to State Farm and made his involvement known, he just simply asked for an extension of time. Didn't provide any basis. And State Farm at that point in time doesn't have any reason to believe that it has caused a need to extend that deadline. Plaintiff was on notice when he contracted for this policy that he would have two years to complete repairs. He was on notice on the date of loss that his clock was ticking. He was on notice when State Farm came out and inspected the loss and gave him an estimate and reminded him you have to complete repairs within two years. He had ample notice, and yet without any sort of explanation, didn't take that action and is now pointing the finger at State Farm. Again, so many things that could assist us in understanding these claims, but also they don't lead us to a different path. They would lead us to where we are here. So are you asking us to make a futility determination? Shouldn't the district court do that? Well, Your Honor, with respect to futility, I don't believe that Plaintiff availed himself of the right to actually argue that now because he had so many opportunities, so many opportunities to amend his complaint and chose not to. Aren't they separate, though, the motion to amend versus the futility and dismissal with prejudice? Correct. Well, and I think we've got a large focus on futility, but I believe it's the Foman case. The court gives examples of reasons where a court would be justified in dismissing a case, but futility is not a requirement. It is simply one means of justifying a dismissal or denial of a motion to dismiss. Well, it certainly would make a dismissal with prejudice make sense. So what I'm struggling with is when I read the district court's order, there's a footnote that explains why it was dismissed with prejudice, and that footnote seems to be entirely about a failure to comply with a local rule. Why isn't that a sanction that's subject to sort of a whole body of different decisional law? I'm having a hard time understanding the ruling on review and how we're supposed to sort of reconcile this footnote with the order. Implicitly, the trial court was stating not necessarily a sanction, but stating I don't have an obligation to consider more because those steps were not followed. And so we don't reach that analysis. I don't reach that analysis of futility, and I'm not required to, because those steps were not followed. So it's not as much of a sanction as perhaps an inability to do so. But even beyond that, I think it's important to note that when a party refuses to amend and they have multiple opportunities to do so, it's reasonable for a court to conclude that they don't have the facts. Do you have any law that says that? Well, I believe actually it's the district court, so it's persuasive, Your Honor, but in the Musil case that's cited within the record, a judge in a footnote actually specifically says, it's reasonable for me to infer that you don't have additional facts to support because you have not chosen to do so in amending your complaint. That's it? Well, let me clarify what your question is, Your Honor. Are you asking whether or not the court has support in the law in choosing not to allow them to move to amend? My question followed what you said, and what I understood you to say is that if the district court felt that it must be futile or else the litigant would have moved to amend, so therefore the court can conclude it's futile and dismiss with prejudice. And I ask, are there any cases that say that? That seems like a real stretch to me. Well, I think the authority that governs this was, I think my opposing counsel references the Caledron matter, but when a court is presented with a party that has failed to properly move but has in some way indicated that they should be allowed to move after the fact, that the court should consider whether or not the party has shown a desire to amend and actually specified how they will amend. Are those findings the district court has to make? I believe so. They weren't made here, right? Well, here I believe the court, I will agree, concede that the footnote is probably the extent of the court's analysis on this in the trial court. But based on my review of the law and what happened here, I think it's still consistent with what the court ended up doing. And the court viewed this as, this was a passing statement that didn't demonstrate a desire to amend. But we have to make, you're asking us to make those inferences, right? Yes, Your Honor. Because the district court, the only reason the district court, it seems, granted dismissal with prejudice was for failure to follow the local rule. Well, I believe the court also looked at the actual facts presented. No, I'm just looking at the specific with prejudice part. I'm not looking at the court's ruling on the actual, whether this complaint stated plausible claims. But it's with prejudice dismissal seems to be entirely because the plaintiff didn't follow local rule. And I'm just concerned that that's subject to a different body of decision a lot. I think it's more than one rule, Your Honor. I think that the argument was developed in our briefing, and the court's ruling followed, even though it may not have explicitly stated in its findings, the court agreed with our position that the plaintiff had not just not followed one rule. It wasn't just a failure to file a proper motion under Rule 15 and Rule 7. It was also a failure to amend in multiple other instances and opportunities to do so. And that's not necessarily a rule violation, as much as acknowledging that the party has failed to amend when given the opportunity to do so. That's one of the basis under Foment for denying that leave, is a failure to amend upon prior opportunities to do so. Can you speak to the $75,000 question? Where's the jurisdiction? How did you come to the conclusion that there was $75,000 in dispute? Sure, Your Honor. Well, we look at a couple different numbers when we remove. And part of that is also, it does get back to the lack of specificity in the complaint. But if we're looking at the amount of depreciation that was reduced, that's $12,000. Triple that under Colorado's unreasonable delay statute, that gets us to about $36,000. Attorney's fees and costs could arguably get you over $75,000. But even beyond that, had plaintiff somehow articulated and developed an argument, which we don't believe they did, in the pleadings, that the entire amount of the award was unreasonably delayed. The award was $60,000. And so doubling that under Colorado's unreasonable delay statute might get you there as well. You'd already paid $48,000 of it, right? Correct, Your Honor. And you'd get two times more than that. For purposes of determining the $75,000 amount of controversy, you have to rely upon the allegations of the complaint. So you can't assume a big blow amount of attorney's fees at all. You're stuck with whatever they say, and they have no amount of money in there. I don't have the notice of removal. You are confined. Sorry, Your Honor. You are confined, and you agree, to what the allegations of the complaint are in order to establish the threshold amount of $75,000 for controversy. Your Honor, I will admit it's been a while since I drafted that notice of removal. I know that I cited case law that does allow us to take into consideration what anticipated attorney's fees and costs would be in removing. Also, beyond the allegations of the complaint, there was the attached excuse me, there was the allegation in the complaint of what the appraisal amount was. And ultimately, if at some point this case were to proceed, and somehow the appraisal itself was questioned, we've got presentation of damages within that complaint of over $95,000. Again, only 48 of which had been paid by State Farm. On a separate point, and this is in the record, but I can't remember where it was, in the legal memoranda opposing the motion to dismiss, did the plaintiff set forth or claim that an amendment would not be futile for the following reasons? Is there anything in there by the plaintiff that addresses the lack of futility? I don't believe so, Your Honor, in part because futility had not been raised within the briefing. However, I will note that plaintiff has focused on the fact that the trial court suggested that specifying the codes and manufacturer specifications that they had only generically stated within the complaint might have lent plausibility. And therefore, in the response brief, plaintiff argued that if they were given an opportunity to amend, they would give more specificity to that. That still is entirely vague, in part because I think they did have an obligation at that point to actually say what the actual codes, what the actual amendment was going to be. And beyond that, the trial court, that was just one example of many that the trial court gave to demonstrate why the complaint was insufficient. That was not the only reason that plaintiff's complaint was insufficient. Had that been true, I don't think we would be here. I think the court would not have dismissed with prejudice because there were many more. The court talks about how plaintiff failed to cite any terms of the policy that State Farm breached. And there's a large, I mean, it's a 20-page order. There's a large number of examples within that order where the court points out what's missing. And so for the plaintiff to believe that simply saying you violated this code and this manufacturer's, I don't think that would have moved it into the realm of plausibility. That would be simply one additional fact that might help. But there was plenty more to be done, and the plaintiff did not argue any of that. So with respect to futility, I think we still are far from having the appropriate arguments in the record to even deal with that. But I would say that I believe there is a solid futility argument if more information were brought in and if more had been pleaded. Any further questions? All right, thank you. Thank you. Mr. Watson, I promised you two minutes, so two minutes you get. Thank you, Your Honor. All right, so I did want to address a couple things that opposing counsel said as well as some of the jurisdictional things. So I do want to clarify that in Colorado, you can recover for payments that are denied. You can also recover for payments which are delayed. You're allowed to recover double damages for that. So even if the payment eventually was paid, even if it was paid pre-suit, that still gets to be counted towards the possible recoverable damages, that double damage number. So that, I think, is where the jurisdiction comes in. Just so we know, what are you relying on, a statute or a case or what? The statute says two times the covered benefit. The statute says that this court in the U.S. general case that we cited in our briefs held that the delay could exist independently of the breach of contract underlying because the breach of contract had been remedied. It had been paid. So that's a case which cites that. Regarding the rest of State Farm's argument, I mean, State Farm is asking the court to consider a lot of facts that it wants the court to consider. The problem is that these are not facts within the complaint. They are not facts which even State Farm argues would fall within G versus Pacheco or any of these other categories which the court is allowed to consider without converting this to a motion for summary judgment. So essentially, State Farm is asking you to treat this as a summary judgment motion where it would get to argue about notice and where it would get to argue about when this, you know, when our client hired a public adjuster, why he delayed. It doesn't get to do that at the 12B6 stage. That's the obligations that we make are entitled to be true. The court is required to draw inferences in our favor, not in their favor. This court held that in the Clinton case that we cited as a supplemental authority just over a month ago where the district court was faulted for drawing inferences in favor of the defendant rather than the plaintiff. The Musil case that she cited, the court explicitly found futility in that case. The last sentence of the order says, I find that amending the complaint would be futile. Accordingly, Musil's request is denied. So that really doesn't support the dismissal with prejudice finding here because there was a finding of futility. So if there are no further questions, I will yield the rest of my time. All right. Hearing none, thank you for your arguments, everyone. The case is submitted. Counselor excused. And the court will stand in recess until 9 o'clock Wednesday morning.